2004 ME 66

**Charles R. MERRICK**

v.

**The NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 12, 2003.
Decided: May 12, 2004.
Revised: May 26, 2004.

Stephen C. Whiting, The Whiting Law Firm, P.A., Portland, for plaintiff.

Byrne J. Decker, Pierce Atwood, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Charles R. Merrick appeals from a judgment of the Superior Court (Cumberland County, *Warren, J.*) awarding Northwestern $10,140 on its counterclaim alleging damages for overpayments of disability benefits on two insurance policies. Merrick contends that the court erred in its interpretation of the policies and in concluding that the rental income he derived from his rental properties was "earned income" as defined in the policies. We agree with Merrick, vacate the judgment, and remand for further proceedings.

## I. BACKGROUND

[¶ 2] Merrick began receiving disability benefits pursuant to three Northwestern insurance policies in 1994. After receiving full disability benefits for almost three years, Merrick began to purchase income-producing apartment buildings. For several years he noted the time he spent renovating or maintaining these properties on forms he submitted to Northwestern. On the advice of his Northwestern agent that rental income was not "earned income" as that term is defined in the policy definitions, he did not report the amount of his rental income.

[¶ 3] All three policies define "earned income" in essentially the same way. The first policy defines it as "salary, wages, commissions, fees or other remuneration earned by the Insured for services performed by him . . . . If the Insured is self-employed, Earned Income means gross income less normal and customary business expenses." The second policy defines it as: "[T]he sum of salary, wages, commissions, fees, bonuses, or other compensation earned by the Insured from all sources of work performed by him . . . . For a self-employed Insured, Earned Income means gross income less normal and customary business expenses." The third policy defines it as: "[T]he sum of salary, wages, commissions, fees, bonuses, or other compensation or income earned by the Insured from all sources of work performed by him; less normal and customary business expenses."

[¶ 4] In June of 2000, Northwestern notified Merrick that he was no longer disabled and stopped paying him benefits. After Merrick protested this determination, Northwestern conducted an investigation and informed him that, not only was he no longer disabled, but all of his rental income was unreported "earned income" pursuant to the policies. As a result, Northwestern claimed that Merrick owed the company over $20,000 in overpaid benefits. Merrick filed suit claiming that he remains disabled, and Northwestern counterclaimed seeking the alleged overpayments.

[¶ 5] The Superior Court determined that Merrick was still partially disabled, but concluded that *all* of his rental income was "earned income" and awarded Northwestern $10,140 in overpaid benefits on two of the policies.

## II. DISCUSSION

[¶ 6] Merrick first challenges the Superior Court's interpretation of the in-

surance policies, raising a question of law that we review de novo. *In re Ross Family Trusts*, 2002 ME 89, ¶ 5, 797 A.2d 1268, 1269.

[¶ 7] We resolve ambiguities in insurance contracts in favor of the insured. *York Ins. Group v. Van Hall*, 1997 ME 230, ¶ 8, 704 A.2d 366, 369. Contractual language is ambiguous if it is "reasonably susceptible of different interpretations," *Cambridge Mut. Fire Ins. Co. v. Vallee*, 687 A.2d 956, 957 (Me.1996), in the view of "an average person, untrained in either the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured," *Peerless Ins. Co. v. Wood*, 685 A.2d 1173, 1174 (Me.1996). Thus, the question presented is whether rental income plainly falls within the policies' definitions of "earned income." Because rents, dividends, and interest are paradigmatic examples of returns on capital,[1] we conclude that to the extent that Merrick's rental income constitutes a return on capital, it is not "earned income" within the policies' definitions.

[¶ 8] Merrick also challenges the Superior Court's determination that *all* of his rental income was "earned income," a factual finding we review for clear error. *Jenkins, Inc. v. Walsh Bros., Inc.*, 2002 ME 168, ¶ 7, 810 A.2d 929, 933. Although Merrick maximized his rental income by performing some management and maintenance duties himself (rather than paying a property manager to perform these func-

tions),[2] the record does not support the trial court's conclusion that *all* of his rental income constitutes "earned income" as that term is defined in the applicable policies. Northwestern, as plaintiff on the counter-claim, has the burden of demonstrating how much of Merrick's rental income is actually "earned income" pursuant to its policies. *See Haworth v. Feigon*, 623 A.2d 150, 160 (Me.1993).

[¶ 9] On remand and on the record before it, the Superior Court should determine what portion of the rental income is attributable to Merrick's management and maintenance efforts during each of the years in question.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

---

1. At trial Northwestern presented evidence of an exception governing real estate professionals in the federal tax code's definition of passive activity, which generally recognizes rental income as passive. 26 U.S.C.S. § 469(c)(2) (2002). Although the tax definition may be some evidence that rental income is widely considered passive, it is only the policies' definitions of "earned income" that are relevant here.

2. When presented with a hypothetical circumstance in which Merrick took in $20,000 a month in rent and then paid a manager $1000 a month to do his work, Northwestern's expert conceded that the remaining $19,000 would not constitute earned income under the policies.